# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF KENTUCKY
# NORTHERN DIVISION AT COVINGTON

| | |
|---|---|
| COMMONWEALTH OF KENTUCKY, *ex rel.* ANDY BESHEAR, ATTORNEY GENERAL,<br><br>    PLAINTIFF,<br><br>v.<br><br>WALGREENS BOOTS ALLIANCE, INC., WALGREEN CO., WALGREENS MAIL SERVICE, LLC, WALGREENS SPECIALTY PHARMACY, LLC, WALGREENS.COM, INC. d/b/a WALGREENS #05823,<br><br>    DEFENDANTS. | CIVIL ACTION NO.<br>**(Removal from Commonwealth of Kentucky, Boone Circuit Court, Div. III, Civil Action No. 18-CI-00846)** |

## NOTICE OF REMOVAL

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1331, 1441, 1446, and 1367, Defendants Walgreen Co., Walgreens Mail Service, LLC, Walgreens Specialty Pharmacy, LLC, and Walgreens.com, Inc. (collectively "Walgreens"),[1] by counsel, has removed the above-captioned action from the Boone Circuit Court, Division III, Boone County, Kentucky, to the United States District Court for the Eastern District of Kentucky. As grounds for removal, Walgreens states as follows:

### I.   NATURE OF REMOVED ACTION

1.  On June 14, 2018, the Attorney General of the Commonwealth of Kentucky ("KY AG") filed a Complaint on behalf of the Commonwealth of Kentucky ("Plaintiff") against Walgreens in the Boone Circuit Court, Division III, Boone County, Kentucky, captioned *Commonwealth of Kentucky, ex rel., Andy Beshear, Attorney General v. Walgreens Boots Alliance, Inc., et al.* The court assigned the case Civil Action No. 18-CI-00846.

---

[1] The Complaint also names Walgreens Boots Alliance, Inc., which has not yet been served.

{00250086.DOCX/1}

2. Plaintiff complains of both over-distribution and over-dispensing of prescription opioids in Kentucky. Plaintiff pleads that Walgreens distributed prescription opioids to its own stores in Kentucky and dispensed opioids from its stores in Kentucky. Compl. ¶ 4.

3. The Complaint asserts ten counts: Consumer Protection Act Violation (Counts I and II); Public Nuisance (Count III); Medicaid Fraud KRS Chapter 205 (Count IV); Medicaid Fraud KRS Chapter 194A (Count V); Breach of Statutory Duties/Negligence Per Se (Count VI); Negligence (Count VII); Unjust Enrichment (Count VIII); Fraud by Omission (Count IX); and Punitive Damages (Count X). Plaintiff seeks declaratory, injunctive, and compensatory relief. *See* Compl., Prayer for Relief, at 63-65.

4. Although Plaintiff disavows stating a federal question, *id.* ¶ 34, Plaintiff pleads, *inter alia*, that the "'closed' chain of distribution" under which Walgreens operates "was specifically **designed by Congress** to prevent the abuse, misuse, and diversion that is complained of herein," *id.* ¶ 92 (emphasis added). As further set forth below, Plaintiff thus pleads its claims based on alleged violations of federal law, the federal Controlled Substances Act ("CSA").

5. Walgreens has not responded to the Complaint in state court. The initial deadline to respond was on July 9, 2018. Walgreens filed a motion for extension of time on July 9, 2018, with a hearing on the motion in state court scheduled for July 24, 2018.

6. On December 5, 2017, the Judicial Panel on Multidistrict Litigation (JPML) formed a multidistrict litigation (MDL) and transferred opioid-related actions to Judge Dan Aaron Polster in the Northern District of Ohio pursuant to 28 U.S.C. § 1407. *See In re Nat'l Prescription Opiate Litig.*, MDL No. 2804 (J.P.M.L. Dec. 5, 2017), ECF No. 328. Walgreens intends to tag this case immediately for transfer to the MDL.

7. In accordance with 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders served upon Walgreens in the state court action are attached as **Exhibit A**. Pursuant to Federal Rule of Civil Procedure 7.1, a corporate disclosure statement is attached as **Exhibit B**.

## II.   TIMELINESS OF REMOVAL

8. The KY AG served the Complaint on Walgreens via its registered agent for service of process on June 19, 2018. In accordance with the requirements of 28 U.S.C. § 1446(b), this notice of removal is timely filed within 30 days after service.

## III.   PROPRIETY OF VENUE

9. Venue is proper in this district and division under 28 U.S.C. § 1441(a), because the state court where the suit has been pending is located in this district and this division.

## IV.   BASIS OF REMOVAL

10. Removal of this case is proper pursuant to 28 U.S.C. §§ 1441 and 1331 because Plaintiff's claims present a federal question under the federal CSA, 21 U.S.C. §§ 801, *et seq.*

### A.   Plaintiff's claims facially arise under federal law.

11. The original jurisdiction of the district courts includes jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "[W]hether a case 'arises under' federal law for purposes of § 1331" is governed by the "well-pleaded-complaint rule." *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 830 (2002).

12. Federal jurisdiction exists when a federal question is presented "on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987); *see Loftis v. United Parcel Serv., Inc.*, 342 F.3d 509, 514 (6th Cir. 2003).

13. "[T]he party who brings a suit is master to decide what law he will rely upon[.]" *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913). In this case, Plaintiff has decided to rely upon federal law.

14. Plaintiff pleads that Walgreens allegedly violated federal law with, *inter alia*, the following allegations:

   a. "[A] sophisticated, closed distribution system exists to [distribute controlled substances] across the nation." Compl. ¶ 91;

   b. "This 'closed' chain of distribution was specifically ***designed by Congress*** to prevent the abuse, misuse, and diversion that is complained of herein." *Id.* ¶ 92 (emphasis added);

   c. "This closed-system of state and ***federal authority imposes specific duties*** upon wholesale distributors to ***monitor, identify, halt and***, perhaps most importantly, ***report suspicious orders*** of controlled substances. ***21 C.F.R. § 1301.74***; *Masters Pharm., Inc. v. Drug Enf't Admin.*, 861 F.3d 206 (D.C. Cir. 2017)." *Id.* ¶ 93 (emphasis added) (citing only *federal* law);

   d. "Acting as a distributor, Walgreens had both the ***responsibility*** and ability ***to recognize, flag, report, and refuse to ship*** 'suspicious orders' for opioids from its pharmacies." *Id.* ¶ 102 (emphasis added) (referring to legal duties arising only under *federal* law).

   e. "Walgreens had a ***legal duty*** to ensure it was ***not filling suspicious orders*** that should have simply been refused. . . . Walgreens did not ***refuse to ship*** or supply the often abused and highly addictive prescription opioids to its Kentucky pharmacies, between 2007 and the present. . . . Walgreens knowingly failed to

      *report suspicious orders* in Kentucky from 2007 to the present." *Id.* ¶¶ 107, 111 (emphasis added) (referring to legal duties arising only under *federal* law);

    f.  "Pharmacists have a *corresponding duty* along with the prescriber to ensure that opioids prescriptions are written for a legitimate patient for a *legitimate medical need* in the usual course of practice for the prescriber." *Id.* ¶ 56 (emphasis added) (referring to legal duty arising only under *federal* law);

    g.  "Kentucky and *federal law* requires that licensed pharmacists *recognize red flags* that indicate addiction, abuse and diversion . . . ." *Id.* ¶ 114 & n.69 (emphasis added) (listing red flags identified in a federal DEA presentation);

    h.  "Walgreens shipped millions of doses of highly addictive controlled painkillers into Kentucky, many of which *should have been stopped* and/or investigated as suspicious orders." *Id.* ¶ 122 (emphasis added) (referring to legal duty arising only under *federal* law).

    i.  "Walgreens, acting as a pharmacy, failed to ensure that the prescriptions it was filling were issued to a legitimate patient for a *legitimate medical purpose* by a practitioner acting in the usual course of professional practice[.]" *Id.* ¶ 126 (emphasis added) (referring to legal duty arising only under *federal* law).

15.    Plaintiff fails to identify any state law source imposing the requirement that a wholesale distributor identify and report suspicious orders of controlled substances to any Kentucky official or entity, or any state law source imposing a requirement that a wholesale distributor "halt," "refuse," or "stop" suspicious orders of controlled substances from registered pharmacies.[2] Likewise, Plaintiff fails to identify any state law source imposing a "corresponding

---

[2] ***Federal*** law imposes those duties. *See* 21 C.F.R. § 1301.74; *Masters Pharm., Inc. v. Drug Enf't Admin.*, 861 F.3d 206 (D.C. Cir. 2017). While the Kentucky CSA requires wholesale distributors to report the "theft" or "loss" of

{00250086.DOCX/1}     5

duty" on retail pharmacies to ensure that prescriptions issued by a registered doctor are for a "legitimate medical purpose" and written in the "usual course" of the prescriber's practice.[3]

16. Plaintiff thus asserts claims based on Walgreens's alleged violations of legal duties that arise *only* under the federal CSA and its implementing regulations with, *inter alia*, the following allegations:

    a. "Walgreens dispensed drugs where the prescription for the drug was not in accordance with the law, including prescriptions that were not written for a ***legitimate medical purpose*** and/or by a physician acting outside of his ***normal practice***." *Id.* ¶¶ 150, 171, 234, 252 (emphasis added) (Counts I, III, VII, IX);

    b. "Walgreens intentionally and/or unlawfully failed to maintain effective controls against abuse, misuse, and diversion through proper monitoring, distributing opioids without ***reporting, and refusing to fail to fill suspicious orders***." *Id.* ¶ 168 (emphasis added) (Count III);

    c. "Walgreens . . . fail[ed] to ***identify, track, and reject suspicious orders*** of addictive prescription opioids . . . . Walgreens' misrepresentations were material, because if the Commonwealth had knowledge of Walgreens' failure to comply

---

controlled substances, no Kentucky law imposes a duty to report or refuse to fill a "suspicious" but otherwise lawful order from a registered pharmacy. *See* Compl. ¶¶ 44-52 (pleading duties owed by distributors under Kentucky law but identifying no authority for the alleged state law duty to disclose or halt suspicious orders).

[3] Again, only *federal law* imposes the duties on which Plaintiff relies. Plaintiff tries to characterize pharmacists' legal duty to ensure that a prescription is for a "legitimate medical purpose" as arising under state law. *See* Compl. ¶¶ 56 & n.27 (citing KRS 218A.180(3)(a) and Controlled Substances Questions on the Kentucky Board of Pharmacy website); *id.* ¶ 114. But the Kentucky statute on which Plaintiff relies says nothing of the kind. It places the duty of ensuring the existence of a "legitimate medical purpose" on the ***prescribing doctor***. *See* KRS 218A.180(3)(a) ("To be valid, a prescription for a controlled substance shall be issued only for a legitimate medical purpose by a practitioner acting in the usual course of his professional practice."). In contrast, the statute makes the pharmacist responsible for proper dispensing ***after*** receipt of a valid prescription. *Id.* ("Responsibility for the proper dispensing of a controlled substance pursuant to a prescription for a legitimate medical purpose is upon the pharmacist who fills the prescription."). It is ***federal law*** that places a "corresponding responsibility" on pharmacists to determine the validity of a prescription from a licensed prescriber. 21 C.F.R. § 1306.04 (cited by the Kentucky Board of Pharmacy website); *see also* Compl. ¶ 114 & n.69 (reciting "red flag" guidance from the DEA).

with state and *federal law*, Walgreens' licenses to distribute opioids would have been suspended or not renewed, and, pursuant to both state and *federal law*, said shipments would not have been made by Walgreens." *Id.* ¶¶ 185-87, 193-194 (emphasis added) (Counts IV and V);

d. "Walgreens was required to ensure that opioid prescriptions filled by Walgreens pharmacies were written for a legitimate patient for a *legitimate medical need* in the *usual course of practice* for the prescriber." *Id.* ¶ 211 (emphasis added) (Count VI);

e. "Walgreens renewed its license to operate as a pharmaceutical distributor in Kentucky, all the while misusing and abusing its privilege to do so by failing to *report and halt suspicious orders* . . . ." *Id.* ¶ 243 (emphasis added) (Count VIII);

f. "Walgreens was under a duty required by law, to *disclose or report orders* of unusual size, orders deviating substantially from a normal pattern, or orders of unusual frequency." *Id.* ¶ 249 (emphasis added) (Count IX) (quoting 21 C.F.R. § 1301.74 without attribution).

17. Because Plaintiff never identifies any provision of the Kentucky Controlled Substances Act and its implementing regulations that contains any requirement analogous to those in the federal CSA and its implementing regulations, Plaintiff's repeated references in its claims to the "KY CSA" and "state law" are surplusage.

18. While a plaintiff "may avoid federal jurisdiction by *exclusive* reliance on state law," *Caterpillar*, 482 U.S. at 392 (emphasis added), Plaintiff's claims here explicitly allege violations of federal law. Plaintiff clearly relies on legal duties that arise only under federal law in at least Counts I, III, IV, V, VI, VII, VIII and IX. And Plaintiff facially pleads alleged

violations of "federal law" in both Counts IV and V. *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 808 (1986) (the "suit arises under the law that creates the cause of action").

19. As discussed below, this federal law is a necessary, disputed, and substantial element of all of Plaintiff's claims and thus presents a substantial federal question, whether or not Plaintiff specifically pleaded that it seeks to apply and enforce the federal CSA. Furthermore, it is not necessary for federal jurisdiction that Walgreens establish that all of Plaintiff's ten counts raise a federal question. Even if Plaintiffs could prove one or more of its ten counts against Walgreens without establishing a violation of federal law, this Court still has federal question jurisdiction. "Nothing in the jurisdictional statutes suggests that the presence of related state law claims somehow alters the fact that [the] complaints, by virtue of their federal claims, were 'civil actions' within the federal courts' 'original jurisdiction.'" *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 166 (1997).

20. Because the Court has original jurisdiction over Counts I, III, IV, V, VI, VII, VIII, and IX, it has supplemental jurisdiction over Plaintiff's other two counts, which are so related that they "form part of the same case or controversy." 28 U.S.C. § 1367(a).

**B. Plaintiff's claims all depend on a substantial question of federal law.**

21. Even when state law creates the causes of action, a complaint may raise a substantial question of federal law sufficient to warrant removal if "the vindication of a right under state law necessarily turn[s] on some construction of federal law." *Merrell Dow*, 478 U.S. at 808-09 (citation omitted); *see Gully v. First Nat'l Bank*, 299 U.S. 109, 112 (1936) ("To bring a case within [§ 1441], a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action.").

22. "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013); *see Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 315 (2005); *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 568 (6th Cir. 2007). "Where all four of these requirements are met . . . jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Gunn*, 568 U.S. at 258.

23. As set forth below, this case satisfies all four requirements. Although some of Plaintiff's theories of recovery against Walgreens ostensibly are pleaded as state law claims, the underlying theory of liability is expressly premised on Walgreens's alleged violations of federal law or alleged duties arising out of federal law—specifically, the CSA.

24. All of Plaintiff's distributor claims depend on an allegation that some portion of Walgreens's shipments to registered pharmacies were actually unlawful because the shipments were suspicious orders that Walgreens allegedly had a duty to identify, report, and halt.

25. The source of the asserted legal duty to monitor and report suspicious orders of controlled substances as a distributor is the federal CSA, 21 U.S.C. §§ 801, *et seq.*, and its implementing regulations. *See* 21 C.F.R. § 1301.74; Compl. ¶ 93 (citing only 21 C.F.R. § 1301.74 as basis for alleged requirement to "identify . . . and, perhaps most importantly, report suspicious orders of controlled substances").

26. The source of the asserted legal duty to suspend shipments of suspicious orders is 21 U.S.C. § 823(b) and (e), as interpreted by the DEA. Specifically, DEA interprets the public

interest factors for registering distributors under the CSA, 21 U.S.C. § 823(b) and (e), to impose a responsibility on distributors to exercise due diligence to avoid filling suspicious orders that might be diverted to unlawful ones. *See Masters Pharm.*, 861 F.3d at 212-13 (citing *Southwood Pharms., Inc.*, Revocation of Registration, 72 Fed. Reg. 36,487, 36,501 (July 3, 2007), as source of DEA's "Shipping Requirement"); Compl. ¶ 93 (citing only *Masters* as basis for alleged requirement to "halt" suspicious orders).

27. Likewise, all of Plaintiff's pharmacy claims depend on an allegation that some portion of Walgreens's lawful dispensing was actually unlawful because the prescriptions were not issued for a legitimate medical purpose by a doctor acting in his usual course of practice.

28. The source of the asserted legal duty to ensure that a prescription was issued for a legitimate medical purpose is 21 C.F.R. § 1306.04(a), which—like Kentucky law—requires that a prescriber issue a prescription for a controlled substances for a "legitimate medical purpose" and "in the usual course of [the prescriber's] practice," but which—***unlike*** Kentucky law— further places a "corresponding responsibility" on "the pharmacist who fills the prescription." *See also* Compl. 114 & n.69 (listing "red flags" outlined in a DEA presentation).

29. Plaintiff's theories of liability against Walgreens, as pleaded in the Complaint, are predicated on allegations that Walgreens breached alleged duties under the federal CSA. *See infra*, ¶¶ 14, 17, Plaintiff does not and cannot identify a state law source for alleged duties to identify, report, and halt suspicious orders of controlled substances as a distributor or to ensure that a prescription was issued for a legitimate medical purpose as a pharmacy.

30. As explained above, Plaintiff's citations to Kentucky law that purportedly impose the above requirements on Walgreens nowhere identify state law that actually imposes those requirements on a wholesale distributor or retail pharmacy. Plaintiff also cites Kentucky law that

incorporates federal law.  *See, e.g.*, Compl. ¶¶ 31, 206.  But this incorporating of federal law into state law supports the conclusion that Plaintiff's claims present a substantial federal question.  *See*, *e.g.*, *West Virginia ex rel. McGraw v. Eli Lilly & Co.*, 476 F. Supp. 2d 230, 233-34 (E.D.N.Y. 2007) (concluding that claims asserted by the West Virginia attorney general under state law stated a substantial federal question because the claimed damages arose from the state's coverage of Zyprexa that was mandated by federal Medicaid law); *In re Pharm. Indus. Average Wholesale Price Litig.*, 457 F. Supp. 2d 77, 80 (D. Mass. 2006) (concluding that "the meaning of A[verage] W[holesale] P[rice] in the federal Medicare statute is a substantial federal issue that properly belongs in federal court").

31.     The federal question presented by Plaintiff's claims therefore is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."  *Gunn*, 568 U.S. at 258.

32.     <u>First</u>, Plaintiff's state law claims "necessarily raise" a federal question because "the right to relief depends upon the construction or application of federal law."  *PNC Bank, N.A. v. PPL Elec. Utils. Corp.*, 189 F. App'x 101, 104 n.3 (3d Cir. 2006); *see also Virgin Islands Hous. Auth. v. Coastal Gen. Constr. Servs. Corp.*, 27 F.3d 911, 916 (3d Cir. 1994) ("[A]n action under 28 U.S.C. § 1331(a) arises only if the complaint seeks a remedy expressly granted by federal law *or if the action requires construction of a federal statute*, or at least a distinctive policy of a federal statute requires the application of federal legal principles.") (emphasis added); *Hardy v. Medtronic, Inc.*, 41 F. Supp. 3d 571, 580 (W.D. Ky. 2014) (finding that plaintiff's state law claim necessarily raised a federal issue because proving a violation of federal law was essential to the plaintiff's case).

33. As pleaded, Plaintiff's claims against Walgreens require it to establish that Walgreens breached duties under federal law, including alleged duties found only in federal law: the duty to report and stop shipments of otherwise lawful orders of controlled substances into Kentucky and to ensure that otherwise valid prescriptions written by registered doctors in Kentucky were for legitimate medical purposes. Therefore, the Complaint necessarily raises a federal issue—namely, whether Walgreens violated the federal CSA.

34. <u>Second</u>, this federal issue is "actually disputed" because the parties disagree as to whether Walgreens violated its duties that arise only under the federal CSA. Indeed, this federal issue is the "central point of dispute." *Gunn*, 568 U.S. at 259.

35. <u>Third</u>, the federal issue presented by Plaintiff's claims is "substantial." "The substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole." *Id.* at 260. Among other things, the Court must assess whether the federal government has a "strong interest" in the federal issue at stake and whether allowing state courts to resolve the issue will "undermine the development of a uniform body of [federal] law." *Id.* at 252, 261 (internal quotation marks omitted). As the Supreme Court explained in *Grable*, "[t]he doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." 545 U.S. at 312.

36. Plaintiff's theories of Walgreens's liability necessarily require that a court determine the scope of Walgreens's obligations under federal law. As Plaintiff pleads, regulation of controlled substances is first and foremost federal regulation: the "'closed' chain of distribution" under which Walgreens operates "was specifically designed ***by Congress*** to prevent

the abuse, misuse, and diversion that is complained of herein." Compl. ¶ 92; *id.* ¶ 91 (pleading that a "sophisticated, closed distribution system exists to [distribute controlled substances] *across the nation*") (emphasis added). Indeed, Congress designed the CSA with the intention of reducing illegal diversion of controlled substances, "while at the same time providing the legitimate drug industry with a *unified approach* to narcotic and dangerous drug control." H.R. Rep. No. 91-1444, at 7 (1970), *reprinted in* 1970 U.S.C.C.A.N. 4566, 4571-72 (emphasis added).

37. Plaintiff's theories of Walgreens's liability thus "involve aspects of the complex federal regulatory scheme applicable to" the national prescription drug supply chain, *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 195 (2d Cir. 2005), and are "sufficiently significant to the development of a uniform body of [controlled substances] regulation to satisfy the requirement of importance to 'the federal system as a whole,'" *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1024 (2d Cir. 2014).[4] Furthermore, "minimizing uncertainty over" reporting and prescribing obligations under the CSA "fully justifies resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 317-18 (2d Cir. 2016) (quotation marks and citation omitted); *see also PNC Bank, N.A.*, 189 F. App'x at 104 n.3 (plaintiff's state law claim "raises a substantial federal question—the interpretation of [a federal statute] over which the District Court properly exercised removal jurisdiction").

38. Removal is particularly appropriate here because Plaintiff's action is but one of at least 1,000 similar actions nationwide, most of which are now pending in an MDL in the

---

[4] The Commonwealth's attempt to enforce the CSA raises a substantial federal question even though the CSA does not provide for a private right of action. In *Grable* in 2005, the U.S. Supreme Court specifically held that the lack of a federal cause of action does *not* foreclose federal-question jurisdiction. The Court stated that applying *Merrell Dow* too narrowly would both "overturn[] decades of precedent," and "convert[] a federal cause of action from a sufficient condition for federal-question jurisdiction into a necessary one." *Grable*, 545 U.S. at 317; *see also*, *e.g.*, *Ranck v. Mt. Hood Cable Regulatory Comm'n*, No. 3:16-cv-02409-AA, 2017 WL 1752954, at *4-5 (D. Ore. May 2, 2017) (state law claims based on violations of Cable Communications Policy Act raise substantial federal question and satisfy *Grable* even though no private right of action exists under the Act).

Northern District of Ohio. The actions consolidated in the MDL include dozens of similar actions brought originally in federal court by Kentucky counties and municipalities, some of which appear as examples in the Commonwealth's complaint. *See* Compl. ¶ 77 (pleading allegations about, *inter alia*, Boone, Kenton, and Campbell counties, each of which are federal court plaintiffs in the MDL). As Plaintiff pleads, the "Opioid Epidemic" has "impacted the United States in whole." *Id.* ¶ 2 (citing an article titled *Opioid Epidemic in the United States*).

39. <u>Fourth</u>, the federal issue is capable of resolution in federal court "without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. Federal courts exclusively hear challenges to DEA authority to enforce the federal CSA against distributors and pharmacies, and litigating this case in a state court runs the risk of the state court applying federal requirements inconsistently with the manner in which the federal agency tasked with enforcing the CSA applies them. Furthermore, Plaintiff seeks, *inter alia*, to "stop Walgreens pharmacies from over-dispensing opioids within Kentucky communities," to "stop Walgreens from filling suspicious orders for opioids placed by its own pharmacies" and to "enjoin" Walgreens. Compl. ¶ 16; *id.* Prayer for Relief at 63-64. The CSA vests federal courts with jurisdiction over proceedings seeking to enjoin violations of the CSA. *See* 21 U.S.C. § 882(a) ("The district courts of the United States and all courts exercising general jurisdiction in the territories and possessions of the United States shall have jurisdiction in proceedings . . . to enjoin violations of this subchapter."). Thus, federal courts already are the primary forum for determining the permissible scope of restraints on distributors and pharmacies under the federal CSA. Plaintiff's Complaint presents these precise questions.

40. <u>In summary</u>, removal of this action is appropriate, because Plaintiff's "state-law claim[s] necessarily raise a stated federal issue, actually disputed and substantial, which a federal

forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314; *see also*, *e.g.*, *Jacobson*, 824 F.3d at 315-18 (state law claims based on defendant's alleged violation of Internal Revenue Code satisfy *Grable*); *NASDAQ OMX Grp.*, 770 F.3d at 1031 (state law claims premised on violations of Exchange Act "necessarily raise disputed issues of federal law of significant interest to the federal system as a whole"); *Gilmore v. Weatherford*, 694 F.3d 1160, 1176 (10th Cir. 2012) ("Although plaintiffs could lose their conversion claim without the court reaching the federal question, it seems that they cannot win unless the court answers that question. Thus, plaintiffs' 'right to relief necessarily depends on resolution of a substantial question of federal law.'") (citation omitted); *Broder*, 418 F.3d at 196 (state law claims premised on cable provider's alleged violations of the Communication Act's uniform rate requirement satisfy "the *Grable* test for federal-question removal jurisdiction"); *PNC Bank, N.A.*, 189 F. App'x at 104 n.3 (state law claim based on violation of Internal Revenue Code Case "gives rise to federal-question jurisdiction" under *Grable*); *Ranck*, 2017 WL 1752954, at *5 (state law claims based on violations of Cable Communications Policy Act satisfy *Grable*.).

41. To the extent that the Court determines that some, but not all, of Plaintiff's counts in the Complaint state a substantial federal question, it has supplemental jurisdiction over the counts determined not to state a substantial federal question, which are so related that they "form part of the same case or controversy." 28 U.S.C. § 1367(a).

## V. OTHER REMOVAL ISSUES

42. Pursuant to 28 U.S.C. § 1446(d), Walgreens will promptly file a copy of this Notice of Removal with the clerk of the state court where the suit has been pending and serve notice of the filing of this Notice of Removal on Plaintiff's counsel.

43. Walgreens files this Notice of Removal without waiving any defenses to the claims asserted by Plaintiff.

44. Walgreens Boots Alliance, Inc., has not been properly served and thus its consent to removal is not required. *See* 28 U.S.C. § 1446(b)(2)(A). Nevertheless, Walgreens Boots Alliance, Inc. consents to removal. Walgreens Boots Alliance, Inc. expressly reserves, and does not waive, all defenses related to service of process and personal jurisdiction.

45. Walgreens reserves the right to amend or supplement this Notice.

**WHEREFORE**, Walgreens removes this action, now pending in the Boone Circuit Court, Division III, Boone County, Kentucky, as Civil Action No. 18-CI-00846 to this Court.

Dated this 18th day of July, 2018.

Respectfully submitted,

*/s/ Frank K. Tremper*
Mark G. Arnzen (#01830)
Frank K. Tremper (#94095)
ARNZEN, STORM & TURNER, P.S.C.
600 Greenup Street
Covington, Kentucky 41011
(859) 431-6100
(859) 431-3778
marnzen@arnzenlaw.com
ftremper@arnzenlaw.com
*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the foregoing was mailed to the following by ordinary U.S. Mail Service on this 18th day of July, 2018:

Andy Beshear
Attorney General
LeeAnne Applegate
Elizabeth Natter
Charles W. Rowland
Assistant Attorneys General
Commonwealth of Kentucky
Office of the Attorney General
Office of Consumer Protection
1024 Capital Center Drive, Suite 200
Frankfort, Kentucky 40601
Elizabeth.Natter@ky.gov
LeeAnne.Applegate@ky.gov
Charlie.Rowland@ky.gov
(502) 696-5300

Wesley W. Duke
Assistant Director
C. David Johnstone
Brian C. Thomas
Billy J. Mabry
Assistant Attorneys General
Commonwealth of Kentucky
Office of the Attorney General
Office of Medicaid Fraud and Abuse
1024 Capital Center Drive, Suite 200
Frankfort, Kentucky 40601
Wesley.Duke@ky.gov
David.Johnstone@ky.gov
Brian.Thomas@ky.gov
Billy.Mabry@ky.gov
(502) 696-5300

                                        */s/ Frank K. Tremper*_____
                                        ARNZEN, STORM & TURNER, P.S.C.