**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON**

| | |
|---|---|
| COMMONWEALTH OF KENTUCKY, *ex. rel.* ANDY BESHEAR, ATTORNEY GENERAL, | CIVIL ACTION NO. 2:18-cv-00126-GFVT **(Removal from Commonwealth of Kentucky, Boone Circuit Court, Civil Action No. 18-CI-00846)** |
| Plaintiff, | |
| v. | |
| WALGREENS BOOTS ALLIANCE, INC.; WALGREEN CO.; WALGREENS MAIL SERVICE, LLC; WALGREENS SPECIALTY PHARMACY, LLC; and WALGREENS.COM, INC. d/b/a WALGREENS #05823 | |
| Defendants | |

## PLAINTIFF'S MOTION TO REMAND

COMES NOW Plaintiff, the Commonwealth of Kentucky, *ex rel.* Andy Beshear, Attorney General, ("Kentucky"), pursuant to 28 U.S.C. § 1447, in the above styled and numbered cause and respectfully moves this Honorable Court to remand this action to the Boone Circuit Court in Boone County, Kentucky. Defendants, Walgreen Co., Walgreens Mail Service, LLC, Walgreens Specialty Pharmacy, LLC, and Walgreens.com, Inc. improperly removed this case, filed by Kentucky to address Defendants' historic and ongoing role in creating the opioid crisis, on the basis of *facial* federal question jurisdiction and, alternatively, on the theory of substantial federal question doctrine. [Doc. 1]. Both theories are terminally errored. Kentucky therefore moves for this cause to be remanded to the Commonwealth of Kentucky, Boone Circuit Court, and in support thereof files the attached memorandum of law.

Filed:  August 17, 2018                    Respectfully submitted,

ANDY BESHEAR
ATTORNEY GENERAL


By:    /s/ *C. David Johnstone*
       LeeAnne Applegate
       Elizabeth Natter
       Assistant Attorneys General
       Commonwealth of Kentucky
       Office of the Attorney General
       Office of Consumer Protection
       1024 Capital Center Drive, Suite 200
       Frankfort, Kentucky 40601
       LeeAnne.Applegate@ky.gov
       Elizabeth.Natter@ky.gov
       (502) 696-5300

       Wesley W. Duke
       C. David Johnstone
       Brian C. Thomas
       Assistant Attorneys General
       Commonwealth of Kentucky
       Office of the Attorney General
       Office of Medicaid Fraud and Abuse Control
       1024 Capital Center Drive, Suite 200
       Frankfort, Kentucky 40601
       Wesley.Duke@ky.gov
       David.Johnstone@ky.gov
       Brian.Thomas@ky.gov
       (502) 696-5300


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 17, 2018, I electronically filed a true and correct copy of the foregoing motion with the Clerk of the Court using the CM/ECF system, which will send notification to all attorneys of record in this matter.

/s/ *C. David Johnstone*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON**

COMMONWEALTH OF KENTUCKY,
*ex. rel.* ANDY BESHEAR, ATTORNEY
GENERAL,

                Plaintiff,

    v.

WALGREENS BOOTS ALLIANCE,
INC.; WALGREEN CO.; WALGREENS
MAIL SERVICE, LLC; WALGREENS
SPECIALTY PHARMACY, LLC; and
WALGREENS.COM, INC. d/b/a
WALGREENS #05823

                Defendants

CIVIL ACTION NO.
**(Removal from Commonwealth of
Kentucky, Boone Circuit Court, Civil
Action No. 18-CI-00846)**

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION TO REMAND**

        This Court should remand this case because federal jurisdiction is neither required nor appropriate. As a threshold matter, the case should be remanded due to the error of the Notice of Removal of failing to represent consent to removal by all defendants. Additionally, this case was properly filed in state court and should remain there, as the claims arise under state, not federal law. Further, there is no cause of action that relies on the resolution of a substantial and disputed federal question. Given the lack of a basis for federal jurisdiction, the Notice of Removal is an attempt by Removing Defendants[1] to slow the resolution of this case and control its placement by "tag[ging] this case immediately" for transfer to the Multidistrict Litigation No. 2804 in the

---

[1] Walgreens Boots Alliance, Inc., did not join in the Notice of Removal. Walgreen Co.; Walgreens Mail Service, LLC; Walgreens Specialty Pharmacy, LLC; and Walgreens.com, Inc. d/b/a Walgreens #05823 are referred to collectively herein as "Removing Defendants."

Northern District of Ohio ("Federal MDL"), where the case will remain an afterthought to bellwether cases set for trial.  [Doc. 1 ¶6].

Nearly identical Notices of Removal were filed in substantially similar cases that have since been remanded. *See New Mexico, ex rel. Hector Balderas, Attorney General, v. Purdue Pharma L.P., et al.,* Case No. 1:18-cv-00386-JCH-KBM, 2018 WL 2943246 (D.N.M. June 12, 2018); *State of Delaware, ex rel. Matthew P. Denn, Attorney General of the State of Delaware v. Purdue Pharma L.P., et al.,* 1:18–383–RGA, 2018 WL 1942363 (D. Del. Apr. 25, 2018).   The correct conclusion, reached in *Denn* and *Balderas*, is that these cases, filed by the respective state's Attorney General against bad actors who contributed to the Opioid Crisis, belong in state court. *See also State of West Virginia ex rel. Morrisey v. McKesson Corp.,* No. 16-1773, 2017 WL 357307 (S.D.W. Va. Jan. 24, 2017).  A ruling to the contrary would serve as an injustice not only to the people of Kentucky, but to the sovereign state.  Kentucky requests this action be remanded, as federal jurisdiction does not exist.

## I.    INTRODUCTION

On June 14, 2018, Kentucky filed its Complaint against Walgreens Boots Alliance, Inc.; Walgreen Co.; Walgreens Mail Service, LLC; Walgreens Specialty Pharmacy, LLC; and Walgreens.com, Inc. d/b/a Walgreens #05823 (collectively "Walgreens") in the Boone Circuit Court, seeking redress for Walgreens' violation of various state laws while serving a dual role as a wholesale distributor, delivering opioids to its own pharmacies, and a dispenser, filling prescriptions of opioids through its own pharmacies and dispensing opioids to the ultimate consumers.  [Doc. 1-1 at ¶4, 31].  The state court Complaint includes the following counts[2]:

---

[2] The Complaint includes ten counts, Count X being a claim for punitive damages which is not discussed herein. *See* [Doc. 1-2 ¶¶ 257-266].

violation of the Commonwealth's Consumer Protection Act (Count I[3] and Count II[4]), Public Nuisance (Count III[5]), Medicaid Fraud KRS Chapter 205 (Count IV[6]), Medicaid Fraud KRS Chapter 194A (Count V[7]), Breach of Statutory Duties/Negligence Per Se (Count VI[8]), Negligence (Count VII[9]), Unjust Enrichment (Count VIII[10]), and Fraud by Omission (Count IX[11]). Each count pertains to actions committed by Walgreens while serving as an opioid distributor and retail pharmacy that resulted in harm to the Commonwealth of Kentucky.

Specifically, acting as a distributor, Walgreens distributed opioids in a manner that endangers the public, in violation of 201 KAR 2:105 § 2, 5, and 7, as well as placing public health at risk, in violation of KRS 367.120. *See* [Doc. 1-1 at ¶¶ 44, 48, 50, 51, 143, 205, 206, 209, 210, 212]. Additionally, Walgreens failed to fulfill its duties to report lost, destroyed, or stolen medication to Kentucky's Cabinet for Health and Family Services. [Doc. 1-1 at ¶¶ 46, 49, 51].

As a retail pharmacy and dispensary, Walgreens failed to ensure that opioid prescriptions filled at their retail pharmacy locations were written for a legitimate patient, for a legitimate medical need, and in the usual course of practice of a legitimate prescriber. [Doc. 1-1 at ¶56]. Walgreens wholly failed to observe "red flags" and prevent the dispensing of opioid medications in a manner that violated Kentucky regulations. [Doc. 1-1 at ¶¶ 57-59]. Walgreens also failed to maintain adequate security over controlled substances within its retail pharmacy stores and failed to abide by record-keeping requirements and reporting requirements, leaving thefts and robberies unreported. [Doc. 1-1 at ¶¶ 60, 61].

---

[3] [Doc. 1-2 ¶¶ 142-56].
[4] [Doc. 1-2 ¶¶ 157-63].
[5] [Doc. 1-2 ¶¶ 164-78].
[6] [Doc. 1-2 ¶¶ 179-90].
[7] [Doc. 1-2 ¶¶ 191-201].
[8] [Doc. 1-2 ¶¶ 202-25].
[9] [Doc. 1-2 ¶¶ 226-38].
[10] [Doc. 1-2 ¶¶ 239-46].
[11] [Doc. 1-2 ¶¶ 247-56].

Further, acting in both capacities, Walgreens failed to comply with Kentucky's laws and regulations relating to controlled substances, in violation of KRS 218A.160(1)(a), and engaged in healthcare fraud and abuse impacting Kentucky's Medicaid program, in violation of KRS 205.8451-8483. [Doc. 1-1 ¶¶ 18, 32, 33, 53, 180-85, 204, 206, 218, 220-21]. Kentucky accuses Walgreens of committing unacceptable practices in failing to comply with Kentucky's Medicaid regulations, in violation of 201 KAR 2:105 § 4(d), KRS 205.5634. [Doc. 1-1 ¶ 206, 209, 212]. Finally, Walgreens engaged in unfair, false, misleading and/or deceptive trade acts or practices, in violation of KRS 367.170(1) and failed to comply with Kentucky's licensure requirements, in violation of KRS 218A.150. [Doc. 1-1 ¶¶ 31, 44, 48, 52, 53, 64, 144, 145, 155, 156]. These allegations of state law violations are enumerated clearly in the Complaint.

This recitation of Kentucky's allegations makes perfectly clear that the gravamen of Kentucky's Complaint is that Walgreens violated Kentucky law in the distribution and dispensing of opioid products. Kentucky relies upon and alleges violation of only state laws throughout the Complaint and in the ten Counts against Walgreens. Kentucky expressly disclaimed redress under any federal statute, and only seeks relief for Defendants' violations of state statutes and common law. [Doc. 1-1 at ¶¶ 34–37].

Still, Removing Defendants filed their Notice of Removal on July 19, 2018, on the grounds that the claims facially arise under federal law and depend on resolution of a substantial federal question. [Doc. 1 ¶6]. As an initial matter, the Notice of Removal is defective as all defendants did not join in the removal, thus violating the rule of unanimity. As such, and because the time for joining in the removal has passed, the case should be remanded. Additionally, Removing Defendants' substantive arguments are inherently wrong and can be supported only through the meticulous extraction of language from few sections of the Complaint where Kentucky referenced,

but in no way relied upon, federal law.  Contrary to Removing Defendants' shallow position taken in the Notice of Removal, the claims set forth by Kentucky facially arise under state law, and the proper forum for their adjudication is state court, the forum chosen by Kentucky. In addition, there is no substantial and disputed federal question that requires resolution in this case.  Accordingly, Kentucky requests that the Court enter an order promptly remanding this action to state court.

## II.     BURDEN ON MOTION TO REMAND

On a motion to remand, the removing party bears the burden of establishing jurisdiction. *Ohio National Life Insurance Company v. United States*, 933 F. 2d 320, 324 (6th Cir. 1990). "Removal statutes must be narrowly construed, and federal courts must protect the jurisdiction of the state court when a case is not properly removed." *Renick v. Smith*, 2007 WL 2174653, at *2 (W.D. Ky. July 26, 2007) (granting a Motion to Remand where all defendants did not timely consent to removal).  If the removing party fails to establish its right to removal by competent proof, the case must be remanded.  *See Long v. Bando Manufacturing of America, Inc.*, 201 F. 3d 754, 756 (6th Cir. 2000).

Federal courts "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Settled law establishes that removal statutes are strictly construed against removal.  *Shamrock Oil & Gas Corp. v Sheets*, 313 U.S. 100 (1941), *Long*, 201 F. 3d at 756 ("Furthermore, because they implicate federalism concerns, removal statutes are to be narrowly construed.").

The scope of federal jurisdiction is considered to be identical under § 1331 and § 1441, regarding federal question jurisdiction, *Long v. Bando Manufacturing of America, Inc.*, 201 F. 3d at 758, but have been separated by Defendants in the Notice of Removal. Thus, they are addressed separately below.

## III.    THE NOTICE OF REMOVAL IS PROCEDURALLY DEFECTIVE

Due to the procedural defect of failing to obtain consent to removal from all defendants, this case should be remanded.  The "rule of unanimity" dictates that all defendants "who have been served or otherwise properly joined in the action" must join in, or file a written consent to, the removal of the action within thirty days of the removal.  *Loftis v. United Parcel Service, Inc.*, 342 F.3d 509, 516 (6th Cir. 2003).   "Failure to [timely] obtain unanimous consent forecloses the opportunity for removal . . . ." *Id.*

Service in accordance with the underlying state court action triggers a defendants' obligation to expressly consent or object to remand.  *Johnson v. Love*, 2015 WL 5138257, at *3 (E.D. Ky. Aug. 31, 2015).  Kentucky law permits for service via mail on an out-of-state defendants, Ky. CR 4.01(a), and upon a corporation by service on "an officer or managing agent thereof, or the chief agent in the county wherein the action is brought, or any other agent authorized by appointment or by law to receive service on its behalf,"  Ky. CR 4.04(5).  "The civil rules require that service on a corporation be made on a representative who is so integrated with the corporation that it is reasonable to presume that the representative will know what to do with the legal papers served on him."  *PNC Bank, N.A. v. Citizens Bank of N. Kentucky, Inc.*, 139 S.W.3d 527, 529-30 (Ky. Ct. App. 2003) (internal citations omitted).  *But see Douglas v. University of Kentucky Hospital, et al.*, 2008 WL 2152209 (Ct. App. Ky. 2008) (holding that service was not perfected on a physicians group where the certified mail was received and accepted by a temporary employee who engaged in minor clerical and staff duties).

One exception to the rule of unanimity is recognized where a non-joining defendant has not been served with service of process at the time the removal petition is filed.  *Parks v. Collins*, 2008 WL 294533, at *4 (E.D. Ky. Jan. 31, 2008).  However, the argument that service was not

made on a non-consenting defendant does not fully insulate the removing defendants from remand, as the removing defendants must determine whether the non-consenting defendant was not, in fact, properly served. *See Simeon v. Kentucky Dept. of Corrections*, 2015 WL 9307328, at *3 (W.D. Ky. Dec. 21, 2015), *Polston*, 2017 WL 878230, at *8, *9. A case may be remanded for failure to satisfy the rule of unanimity even where the record fails to indicate whether some defendants were "served or otherwise received notice of the lawsuit against them," where the presence of their names on the complaint gives the removing defendant notice that consent should be sought from the non-served parties. *Id.* at *3. Deficiency under the rule of unanimity is avoided where the non-served party consents to removal via an affidavit or other representation in the Notice of Removal. *See Lindon*, 2013 WL 5441981 (accepting as satisfaction of the rule of unanimity a statement by the non-served defendant "consents through counsel to the removal of this action, without waiving any defenses and objections based on insufficiency of service of process or lack or personal jurisdiction."), *Polston*, 2017 WL 878230 at *2 (referencing an affidavit stating that two defendants "have not been served with the Complaint. However, an officer of both companies has agreed to this removal petition.").

Here, the rule of unanimity is not satisfied, precluding the exercise of federal jurisdiction over this action. Specifically, Walgreens Boots Alliance, Inc., has been properly served and is on notice of the lawsuit and claims against it. The failure to include the consent of Walgreens Boots Alliance, Inc., either in the Notice of Removal or otherwise through a separate pleading or affidavit is fatal to the removal of this action.

Removing Defendants represent in a footnote "[t]he Complaint also names Walgreens Boots Alliance, Inc., which has not yet been served." [Doc. 1 at fn 1]. However, the docket indicates that Walgreens Boots Alliance, Inc., was served on June 19, 2018, via certified mail

directed to its principal place of business in Deerfield, Illinois, with the signature of John Zorzy appearing on the return receipt, attached hereto as Exhibit A. Service via certified mail to Walgreens Boots Alliance, Inc.'s principal place of business was completed in accordance with Ky. CP 4.01(a) and 4.04(5). The summons and complaint was provided, and no further action was required by Kentucky. Despite any chant that Walgreens Boots Alliance, Inc., was not properly served, the opposite is true. Thus, Walgreens Boots Alliance, Inc., had an obligation to voice its consent to removal within thirty days of the removal, which it failed to do.

Further, it is reasonable to presume that John Zorzy is so integrated with Walgreens Boots Alliance, Inc., that he knew the procedures to follow after receipt of the summons and complaint, and that he in fact followed those procedures. *See PNC Bank, N.A.*, 139 S.W.3d at 529-30.[12] Kentucky has every indication that John Zorzy was not a mere clerk, but rather a longstanding employee whose acceptance of the summons and Complaint caused Walgreens Boots Alliance, Inc., to hire the law firm of Arnzen, Storm & Turner, P.S.C. – which also represented the other Walgreens Defendants – which then entered a limited appearance on the company's behalf. Based on the same, Walgreens Boots Alliance, Inc., is undoubtedly on notice of the lawsuit and claims against it, had legal representation, and could and should have joined, or objected to, the removal.

Even if this Court disagrees that service has been perfected, Walgreens Boots Alliance, Inc.'s failure to join in the removal warrants remand under the rule of unanimity. With such apparent notice of this lawsuit by Walgreens Boots Alliance, Inc., only its consent via affidavit or some affirmative representation within the Notice of Removal should satisfy the rule of unanimity. Notably, the other Walgreens defendants, Removing Defendants, had sufficient notice of Walgreens Boots Alliance, Inc.'s existence as a party to this action – as all Defendants are

_____

[12] According to his LinkedIn page, Mr. Zorzy has worked for Walgreens for over 27 years.

represented at least in some capacity by the same law firm – but wholly fail to represent that they have communicated with Walgreens Boots Alliance, Inc., to determine if it indeed has not been properly served and/or whether it joins in the removal. *See Simeon*, 2015 WL 9307328 at \*3. Without any indicia that Walgreens Boots Alliance, Inc., consents to the removal of this action, and the time period for consenting to the removal having run, this Court should remand the case.

## IV. KENTUCKY'S CLAIMS ARISE UNDER STATE LAW

Removing Defendants argue that federal jurisdiction exists because Kentucky's claims facially arise under federal law. To that submission, Removing Defendants state conclusively that "Plaintiff has decided to rely upon federal law." [Doc. 1 at ¶ 13]. However, this misleading, unadorned conclusion does not in itself create jurisdiction, nor does Defendants' contention that Counts I, II, VI, and VII of the Complaint are "based on allegations of federal law." [Doc. 1 at ¶ 17]. Rather, jurisdiction under this theory simply does not exist, as the claims and relief sought in the Complaint arise under state law.

Typically, "a complaint alleging a violation of a federal statute as an element of a state cause of action, when Congress has determined that there should be no private, federal cause of action for the violation, does not state a claim 'arising under the Constitution, laws, or treaties of the United States.'" *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 817 (1986) (quoting 28 U. S. C. § 1331). Removal under this theory hinges on whether the law that creates the cause of action is state law. *Mikulski v. Centerior Energy Corp.*, 501 F. 3d 555, 565 (6th Cir. 2007) (discussing federal question jurisdiction). Federal question jurisdiction is not created by the simple incorporation of a federal regulation into state law, or where violation of a federal regulation gives rise to a state claim. *See Columbus Bank & Tr. Co. v. CompuCredit Corp.*, No. 4:08-CV-78

(CDL), 2008 U.S. Dist. LEXIS 78508, at *7-9 (M.D. Ga. Sep. 3, 2008), *Merrell Dow*, 478 U.S. at 817.

In *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804 (1986), the Court considered federal jurisdiction under § 1331 where a state tort claim rested in part on violation of federal misbranding regulations that created a presumption of negligence under state law. 478 U.S. at 806. No similar cause of action existed under federal law. *Id* at 812. The *Merrell Dow* Court declined to exercise federal jurisdiction over the claim, advising that "in exploring the outer reaches of §1331, determinations about federal jurisdiction require sensitive judgments about congressional intent, judicial power, and the federal system." *Id.* at 810.

Applying that standard in the similar case filed by New Mexico, the *Balderas* court rejected the argument that the state facially pled federal causes of action against by alleging violations of the Federal Controlled Substances Act ("Federal CSA" or "FCSA") as well as state law where the state only asserted claims arising under state law. The court explained that "Plaintiff's Complaint does not allege a federal cause of action under the FCSA—nor could it have because the FCSA provides no federal cause of action." 2018 WL 2943246, at *4.

The same conclusion was reached in a similar case filed by West Virginia. Opioid distributor McKesson Corporation removed that State's action for nearly identical claims, yet the district court granted West Virginia's motion to remand, holding that its state law claims were not federal on their face. *West Virginia, et. al. v. McKesson Corporation*, 2:17-CV-03555, ECF No. 21 ("Order Granting Second Remand") (S.D.W. Va. February 15, 2018) ("*West Virginia II*"). In two separate orders remanding the case, the district court rejected the argument that only federal law created a duty for which McKesson might be liable. *The State of West Virginia v. McKesson Corporation*, 2017 WL 357307, at *4 ("Order Granting First Remand") (S.D.W. Va. 2017) ("*West*

*Virginia I*"), *West Virginia II*, Order Granting Second Remand at 12-13. The district court observed that federal law is not the only source of a duty in connection with opioid production and distribution and that state law may and does also create such duties. *West Virginia I*, 2017 WL 357307, at *4. In a separate remand order, the district court held that the state law claims asserted should be adjudicated in a state court. *Id*. at 15.

The same is true here. Removing Defendants wholly fail to state how the various causes of action within the Complaint fall under federal rather than state law, other than remarking conclusively that the alleged violations are of "legal duties that arise *only* under the federal [Controlled Substances Act]." [Doc. 1 at ¶ 16]. To the contrary, the plain language of the Complaint specifically references duties created by the Kentucky Controlled Substances Act ("Kentucky CSA") and alleges violations of state statutes including the Kentucky Consumer Protection Act and state Medicaid fraud regulations, among other statutes and common law theories.

Removing Defendants go so far as to proclaim, albeit disingenuously, that "[e]ven if Plaintiffs (sic) could prove one or more of its ten counts against Walgreens without establishing a violation of federal law, this Court still has federal question jurisdiction." [Doc. 1 at ¶ 9]. This misstatement of the controlling standard cannot distract from the fact that there are *no* federal claims raised by Kentucky, and the law controlling the claims raised is Kentucky law.

While Kentucky law incorporates by reference the federal regulations under which Walgreens must operate, as a distributor of opioid pharmaceuticals, 201 KAR 2:105, the claims in the Complaint *arise under* Kentucky law. For example, pertaining to Walgreens' distribution practices, Kentucky law requires that distributors of opioids maintain state licensure separate from that required by federal regulation. KRS 218A.150. Though these licensure requirements require

maintaining federal licensure and good standing under federal law, they are separate nonetheless, and regulated specifically by an entity of the Commonwealth: the Kentucky Cabinets for Health and Family Services.  KRS 218A.160.

The mere fact that Walgreens' violations of state law might also violate federal law is insufficient to place this action in federal court.  *See Grable & Sons Metal Products, Inc. v. Darue Engineer & Manufacturing*, 545 U.S. 308, 319 (2008).  The resolution of claims arising under Kentucky law – including the Kentucky CSA, negligence and public interest law – should occur in its courts, "even if a violation of a federal statute or standard is an element of those claims." *See West Virginia II,* Order Granting Second Remand at 14.  The absence of a federal cause of action for the alleged wrongful conduct and the plain language of the Complaint should result only in the finding that there are no facially federal claims.  Accordingly, Kentucky's action against Walgreens should be remanded to Kentucky state court so that Kentucky courts may enforce its state law.

## V.   KENTUCKY'S CLAIMS ALSO DO NOT INVOLVE A SUBSTANTIAL AND DISPUTED FEDERAL QUESTION

As a second angle at forcing this action into federal court, Removing Defendants argue that the allegations in the Complaint depend on resolution of substantial and disputed federal questions. This theory is one that accepts that the cause of action is grounded in state law, yet holds federal jurisdiction is available where a "substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims, or that one or the other claim is 'really' one of federal law."  *Mikulski*, 501 F. 3d at 565.  The Sixth Circuit brands this jurisdiction as

"exceptional" and maintains that "[t]he mere presence of a federal issue in a state law cause of action does not automatically confer federal question jurisdiction." *Id.*

The "single standard" was expressed in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*: the presence of a disputed federal issue and importance of a federal forum for the issue, with an assessment of the necessity of holding such a forum "with Congress's intended division of labor between state and federal courts." *Mikulski*, 501 F. 3d at 568 (quoting *Grable*, 545 U.S. 308, 319 (2005)). *See also Denn*, 2018 WL 1942363, at *2-*5; *Balderas*, 2018 WL 2943246, at *5-*6. The Court restated these considerations in *Gunn v. Minton*, 568 U.S. 251, 258, as four elements, the satisfaction of which implicates federal jurisdiction: the federal issue is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." (2013).

**A. Federal jurisdiction does not exist because there is no *actually disputed* federal issue.**

In the case at bar, there is no *actual* "dispute or controversy respecting the validity, construction or effect of federal law." *See Gunn v. Minton*, 568 U.S. at 258, *Grable*, 545 U.S. at 313. There is no substantial question regarding application of the Federal CSA to Walgreens, the interpretation of the Federal CSA, or any relief available under federal law; the questions to be litigated in this case involve whether Defendants in fact breached its duties in Kentucky and whether that breach violated Kentucky law. Accordingly, Kentucky's state-law claims do not fall under the jurisdiction of any federal court.

**B. Federal jurisdiction does not exist because there is no necessarily raised, substantial federal question that needs to be resolved in federal court.**

The *Denn* and *Balderas* decisions prove instructive under this inquiry as well. Each court concluded that the federal question of McKesson's violations of the Federal CSA was not necessarily raised by either State-plaintiff. Specifically, the *Denn* court reasoned:

> Although a determination of whether Defendants violated the FCSA may occur while addressing Plaintiff's claims, there is also the possibility that the claims will be resolved without resolution of the federal issue at all. Based on the complaint, it is possible for the state law claims to be resolved solely under state law. Although the complaint addresses some duties or requirements under the FCSA, the complaint also lists several other duties and standards that arise solely under state statutory or common law.

2018 WL 1942363 at *2 (citation omitted).

Similar to Kentucky, Delaware has its own Controlled Substances Act, and alleged violations of that state law as well as the Delaware Consumer Fraud Act. *Id.* at *3. As the State could prevail on its Delaware Consumer Fraud Act claim through the defendants' misrepresentations "unrelated to federal law" and on its public nuisance claims "by showing Defendants violated the Delaware Controlled Substances Act," and on its negligence claim by showing conduct that fell below the standards of care, it did not reference federal law. *Id.*

The *Balderas* court reached the same conclusion, reasoning that:

> . . . contrary to McKesson's claim that Plaintiff can prevail only by showing that Defendants violated the FCSA, it appears that Plaintiff could show that Defendants violated state law duties to control, report and guard against the diversion of prescription drug orders, meaning that the federal statute is not necessarily raised. While a determination of a duty and violation of that duty under the FCSA will likely occur in examining Plaintiff's claims, so also will examination of New Mexico common law, statutes, and promulgated rules to determine Defendants' duty, if any, to prevent "diversion" of prescription drugs into illicit channels. . . . New Mexico state law provides alternate theories for a finding of liability against McKesson and its codefendants because the Complaint implicates numerous alleged duties under state law. Thus, as in Merrell Dow, the Complaint refers to the FCSA, its regulations, and the DEA letters as "available criter[ia] for determining

whether" Defendants are liable, but their liability, if any, does not hinge exclusively on federal law, as McKesson argues.

2018 WL 2943246, at *6 (citation omitted).

The analysis in *Balderas* is consistent with the long-standing principle that where the federal statute does not necessarily provide an essential element of the state law claim—due to the presence of a parallel, yet independent or "alternate" state law theory—the substantial federal question doctrine is not implicated. *Long*, 201 F. 3d at 760. *See also Rains v. Criterion Systems, Inc.*, 80 F.3d 339, 346-47 (9th Cir. 1996) (citing *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 810 (1988)).[13]

The same principle applies here. The existence of parallel federal regulations does not dilute Kentucky's actions against Walgreens for violations of State laws, nor do allegations of fraud against a pharmaceutical industry member implicate a substantial and disputed federal question simply because federal laws are also at play. Kentucky can succeed on its claims by showing Walgreens' failures to maintain sufficient security and control over their controlled substance inventories as both a distributor and retail pharmacy. [Doc. 1-1 at ¶¶ 51, 61] (citing 201 KAR 2:105 §5, 201 KAR 2:100). Kentucky can also succeed on its claims by showing Walgreens'

---

[13] *See also, e.g.*, *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 153–54 (4th Cir. 1994) ("*Christianson* teaches us that, if a claim is supported not only by a theory establishing federal subject matter jurisdiction but also by an alternative theory which would not establish such jurisdiction, then federal subject matter jurisdiction does not exist."); *Willy v. Coastal Corp.*, 855 F.2d 1160, 1170–72 (5th Cir. 1988) (finding that where plaintiff's claim was supported by alternate theories, the first implicating the employer's compliance with federal law and the second implicating the employer's compliance with state law, that "the *Christianson* doctrine is properly applied . . . and results in the conclusion that Willy's wrongful discharge claim does not arise under federal law"); *Coker v. DaimlerChrysler Corp.*, 220 F. Supp. 2d 1367, 1371–72 (N.D. Ga. 2002) ("As Plaintiffs argue, 'safety standards' is a broad category, that may include industry and consumer standards as well as federal regulations. Plaintiffs' case does not depend 'entirely' on Defendant's alleged violations of federal regulations, and so the circumstances of *Ayres* are not present here. This case thus does not present the exceptional circumstances giving rise to federal jurisdiction." (citations omitted)); *Wynn ex rel. Ala. v. Philip Morris*, 51 F. Supp. 2d 1232, 1245–46 (N.D. Ala. 1999) ("It is not the case that merely because federal antitrust law and RICO present alternative bases of granting the *quo warranto* relief requested in this action, the plaintiffs right to relief will 'necessarily depend on a resolution of a substantial question of federal law.' Far from being an intricate part of the web of connections that hold the plaintiff's claim together, the federal statutory grounds for *quo warranto* relief are isolated threads, the presence or absence of which makes no integral difference to the plaintiff's claim as a whole." (citations omitted) (quoting *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 27–28 (1983))).

failures to comply with State reporting loss and theft requirements. [Doc. 1-1 1 at ¶¶ 45, 51, 61] (citing 201 KAR 2:105 §5, KRS 315.335). The potential for success through these channels, wholly unrelated to federal law, precludes the exercise of federal jurisdiction under the *Grable* analysis.

Further, that Kentucky seeks relief based on Walgreens' actions as a retail pharmacy warrants no different result. Removing Defendants would have this Court believe that federal question jurisdiction exists because federal law, "***unlike*** Kentucky law – further places a 'corresponding responsibility' on 'the pharmacists who fills the prescription'" to ensure that the prescriber issued the prescription for a legitimate medical purpose and in the usual course of the prescriber's practice. [Doc. 1 at ¶28] (emphasis supplied). Removing Defendants also claim that "Plaintiff does not and cannot identify a state law for the alleged duties . . . to ensure that a prescription was issued for a legitimate medical purpose as a pharmacy." [Doc. 1 at ¶29]. Yet, Kentucky law, cited in the Complaint, provides that "[r]esponsibility for the proper dispensing of a controlled substance pursuant to a prescription for a legitimate medical purpose is upon the pharmacist who fills the prescription." [Doc. 1-1 at ¶ 56] (citing KRS 218A.180(3)(a)). The lack of the words "corresponding duty" cannot be said to invoke federal jurisdiction.

Further, Removing Defendants refer to Complaint paragraph 114 as "listing 'red flags' outlined in a DEA presentation but ignore that the same red flags were enumerated by the Kentucky Board of Pharmacy. [Doc. 1-1 at ¶ 57]. That red flags identified by the Kentucky Board of Pharmacy are similar to those provided in an unidentified DEA presentation cannot justify the exercise of federal jurisdiction over this action.

Removing Defendants' shallow analysis of the claims in this case fails to satisfy the *Grable* standard. Their unsophisticated arguments do not necessitate the exercise of federal jurisdiction,

but rather exhibit a misunderstanding of the claims involved in this case. The claims set forward by Kentucky rely on and arise from state law without giving rise to any substantial federal question. Therefore, this case should be remanded.

## VI.    COMITY AND FEDERALISM MILITATE IN FAVOR OF REMAND

The States have a vested interest in enforcing their own laws. The principles of comity and federalism militate in favor of allowing Kentucky to protect its citizens by the pursuit of those alleged to have violated its health and safety laws. The Supreme Court has expressed its reluctance to "snatch cases which a State has brought from the courts of that State, unless some clear rule demands it." *Franchise Tax Bd.*, 463 U.S. at 22 n. 22. As the West Virginia district court noted, federal courts have "little interest" in deciding cases involving the state laws from which the West Virginia – and Kentucky -- claims arise. *West Virginia II*, Order Granting Second Remand at 15. On the contrary, there is a very real interest in maintaining the balance between state and federal judicial responsibilities. *Id.* Indeed, the Federal MDL Court has "recognize[d] it has no jurisdiction over (1) the AGs or their representatives, [or] (2) the State cases they have filed." *In re National Prescription Opiate Litigation*, 1:17-md-02804, ECF No. 146, Order Regarding State Court Coordination (N. D. Ohio Feb. 27, 2018).

In this context, the exercise of federal jurisdiction would "disrupt the federal-state balance approved by Congress." As *Denn* explained:

> In this case, the federal issues are merely elements of state common law claims. . . . [I]f the FCSA standard without a federal cause of action could get a state claim into federal court, so could any other federal standard without a federal cause of action . . . Here, much like *Merrell Dow*, entertaining "garden variety" state law tort claims resting on federal statutory violations, such as negligence and fraud, could lead to a flood of state law claims entering federal courts and could disturb congressional intent regarding federal question jurisdiction in § 1331. Considering this potential threat to the structural division of labor between state and federal courts, in addition to the absence of a federal cause of action, it is "improbable that the Congress ... would have meant to welcome any state-law tort case implicating

federal law" merely because the federal statutes create standards of care or elements to causes of action under state law. Thus, the Court cannot entertain Plaintiff's state law claims without disturbing the congressionally-approved division of labor between federal and state courts.

2018 WL 1942363, at *5 (quoting *Grable*, 545 U.S. at 319; citation omitted); *See also Balderas*, 2018 WL 2943246, at *6 (quoting and following reasoning in *Denn*).

Thus, to draw the Commonwealth of Kentucky into federal court to litigate claims for violation of its Consumer Protection Act, public nuisance, and Medicaid Fraud would greatly extend federal courts' jurisdiction into the States' dominion. This would serve as an unnecessary encroachment on state sovereignty. Here, there is no corresponding federal interest at stake, much less a substantial one. *See Mikulski*, 501 F. 3d at 570 (finding that the lack of a federal agency in the dispute, or issue as to an agency's compliance with a statute or regulation, "weighs against characterizing the federal interest as substantial"). There is no federal agency involved; there is no federal question, the resolution of which will resolve this case. The resolution of the federal question that Defendants insist is implicated in this dispute – whether its actions also violate the federal CSA – will not resolve the state law violations alleged in the Complaint.

## VII.    CONCLUSION

For the foregoing reasons, Kentucky respectfully requests that this action be remanded to the Circuit Court of Boone County.

Filed:  August 17, 2018                              Respectfully submitted,

                                                     ANDY BESHEAR
                                                     ATTORNEY GENERAL


                                   By:    /s/ *C. David Johnstone*
                                          LeeAnneApplegate
                                          Elizabeth Natter

Assistant Attorneys General
Commonwealth of Kentucky
Office of the Attorney General
Office of Consumer Protection
1024 Capital Center Drive, Suite 200
Frankfort, Kentucky 40601
Elizabeth.Natter@ky.gov
LeeAnne.Applegate@ky.gov

(502) 696-5300

Wesley W. Duke
C. David Johnstone
Brian C. Thomas
Assistant Attorneys General
Commonwealth of Kentucky
Office of the Attorney General
Office of Medicaid Fraud and Abuse Control
1024 Capital Center Drive, Suite 200
Frankfort, Kentucky 40601
Wesley.Duke@ky.gov
David.Johnstone@ky.gov
Brian.Thomas@ky.gov
(502) 696-5300

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 17, 2018, I electronically filed a true and correct copy of the foregoing motion with the Clerk of the Court using the CM/ECF system, which will send notification to all attorneys of record in this matter.

/s/ *C. David Johnstone*